UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **LUKE PATTERSON,** § | |
| § | |
| **JACOB PATTERSON,** and § | |
| § | |
| **GARY HEITZ,** § | |
| *Plaintiffs,* § | |
| § | **CIVIL ACTION NUMBER 1:18-cv-998** |
| **V.** § | |
| § | |
| **BUDBO, INC.,** § | |
| § | |
| **LANEAXIS, INC.,** § | |
| § | |
| **LANEAXIS GPSCT, INC.,** and § | |
| § | |
| **RICK LYNN BURNETT, a/k/a RICK BURNETT,** § | |
| *Defendants* § | |

### PLAINTIFFS' ORIGINAL COMPLAINT

COME NOW PLAINTIFFS, Luke Patterson, Jacob Patterson, and Gary Heitz, and file this their Original Complaint, complaining of DEFENDANTS, Budbo, Inc. ("Budbo"), LaneAxis, Inc. ("LaneAxis"), LaneAxis GPSCT, Inc. ("GPSCT"), and Ricky Lynn Burnett ("Mr. Burnett"), and in support thereof would show as follows:

### I.  PARTIES

1. Plaintiffs are individuals all residing in Texas.

2. Rick Lynn Burnett, a/k/a Rick Burnett, is an individual residing in California, and can be served with process at 21881 Oceanbreeze Lane, Huntington Beach, California 92646, or 11159 Campanile, Newport Beach, California 92660.

3. Budbo, Inc., is a corporation organized under the laws of Delaware, and can be served with process at Vcorp Services, L.L.C., at 1013 Centre Road Suite 403-B, Wilmington, Delaware 19805, or Rick Lynn Burnett, its CEO, at 21881 Oceanbreeze Lane, Huntington

Beach, California 92646, or 11159 Campanile, Newport Beach, California 92660.

4. LaneAxis, Inc., is organized under the laws of the state of Delaware, and may be served through its registered agent, Corporation Service Company, at 251 Little Falls Drive, Wilmington Delaware, 19808, or Rick Lynn Burnett, its CEO, at 21881 Oceanbreeze Lane, Huntington Beach, California 92646, or 11159 Campanile, Newport Beach, California 92660.

5. LaneAxis GPSCT, Inc., is organized under the laws of the state of Delaware, and may be served through its registered agent, Vcorp Services, L.L.C., at 1013 Centre Road Suite 403-B, Wilmington, Delaware 19805, or Rick Lynn Burnett, its CEO, at 21881 Oceanbreeze Lane, Huntington Beach, California 92646, or 11159 Campanile, Newport Beach, California 92660.

## II.  JURISDICTION & VENUE

6. Subject matter jurisdiction is based on 28 U.S.C.A. §1332(a) in that there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.00, including estimated damages and attorneys' fees which are recoverable by contract and statute.[1] In determining diversity, Budbo should be considered a defendant for all claims, including those brought derivatively on its behalf.  Specifically, Mr. Burnett, a Defendant, is in control of Budbo, and is antagonistic to Plaintiffs' requests for relief.  That is, he participated in the misuse of Budbo's assets and other conduct of which Plaintiffs complain, and is aligned against Plaintiffs in their request for relief; all as set forth below.  In this regard, Budbo should be considered a defendant for determining diversity pursuant to the Supreme Court's holding in ***Smith v. Sperling***.[2]

---

[1] *See **Grant v. Chevron Philips Chem. Co.,***, 309 F.3d 864, 873-74 (5th Cir. 2002) (finding attorneys' fees are included in the amount in controversy when they are recoverable by statute or contract).
[2] *See **Smith v. Sperling***, 77 S.Ct. 1112, 1115-1116 (1957); *see also **Tsuru v. Kayaba***, 2009 WL 10694905, 4-5 (S.D.Tex. 2009) (stating "[w]here a plaintiff brings a derivative action and the

7. Even in the absence of diversity jurisdiction, this court has exclusive jurisdiction over Plaintiffs' securities claims under 15 U.S.C.A §78j and 17 C.F.R. §240.10b-5.[3] Furthermore, it has supplemental jurisdiction under §1367(a) for all remaining claims because the underlying facts are so related to the securities claims that they form part of the same case or controversy.

8. This Court has specific personal jurisdiction over Defendants under Texas' long arm statute, which allows exercise of jurisdiction over an out-of-state defendant for "doing business" in Texas.[4] "The Texas Supreme Court has interpreted the 'doing business' requirement broadly, allowing the long arm statute to reach as far as the federal Constitution permits."[5] Here, Mr. Burnett, acting in his own interest and on behalf of LaneAxis as its CEO, induced Defendants, while they resided in Texas, to exchange their membership interests in Bubo Technologies, L.L.C., for shares of stock in Budbo, Inc., all as set forth more fully below. He acted fraudulently with the reasonable expectation that the harm from any fraud would be felt in Texas. Moreover, the share-exchange agreement called for performance of its terms in part in this state. Finally, he recruited at least two of the Plaintiffs for employment, the duties of which required performance inside and outside this state. Specifically, Luke Patterson was appointed as Budbo's president, and Jacob Patterson was appointed by Budbo's chief technical officer

---

complaint alleges an antagonism between the plaintiff and the current management of the corporation, the corporation is aligned as a defendant," citing ***Smith v. Sperling***).

[3] *See* 15 U.S.C.A. §78aa(a) (granting exclusive jurisdiction to federal courts for "violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder.").

[4] TEX.CIV.PRAC.&REM.CODE §17.042. Whether sitting in diversity or federal question jurisdiction, the Court may exercise personal jurisdiction over an out-of-state defendant if the state's long-arm statute authorized such exercise, and the exercise satisfies due process under the U.S. Constitution. *See **Bar Group, L.L.C. v. Business Intelligence Advisors, Inc.***, 215 F.Supp.3d 524, 535-536 (S.D.Tex. 2017) (citing ***McFadin v. Gerber***, 587 F.3d 753, 759 (5th Cir. 2009) (regarding exercise of jurisdiction under diversity jurisdiction) and ***Rolls-Royce Corp. v. Heros, Inc.***, 576 F.Supp.2d 765, 785-786 (N.D.Tex. 2008) (regarding exercise of jurisdiction under federal question jurisdiction).

[5] ***Bundle Lining***, 85 F.3d at 204 (citing ***Schlombohm v. Schapiro***, 784 S.W.2d 355, 357 (1990)).

concerned with development of the Software; all as set forth more fully below.

9    For the same reasons justifying personal jurisdiction in this state, venue is proper in this Court under 28 U.S.C.A §1391(b)(2), as well as under 15 U.S.C.A. §78aa.[6]

### III.  FACTS COMMON TO ALL CAUSES OF ACTION

10.    Plaintiffs formed Bubo Technologies, L.L.C. ("Bubo") to develop software for phones and computers to locate vendors and dispensaries of marijuana, and other functions including tracking product shipments ("Software").  Plaintiffs held 90 percent of Bubo's membership interests, with the remaining 10 percent owned by a third party.  Bubo began offering the Software for download in roughly October 2016 under the trademark BUDBO.

11.    Bubo determined that it needed GPS tracking software to improve the Software's functionality.  Mr. Burnett claimed his company, LaneAxis, Inc. ("LaneAxis"), had the requisite tracking software and that it was functional.  LaneAxis is the sole owner of GPS Cannabis Tracker, Inc., that owned the rights to tracking software.  In order to gain access to the tracking software, Bubo's members entered into a share-exchange agreement with a newly formed company, Budbo, Inc. ("Budbo").  Specifically, the share-exchange agreement obligated LaneAxis to license the tracking software to Budbo.

12.    Budbo has 5,000,000 outstanding shares. The Bubo members received 51 percent of Budbo's outstanding shares in exchange for their membership interests in Bubo.  Plaintiffs in particular received 48.45 percent of Budbo's shares, and continue to own those shares through the date of this complaint.  As a result of the exchange, Bubo became a wholly owned subsidiary of Budbo.  LaneAxis GPSCT, Inc. ("GPSCT") received the remaining 49 percent of the

---

[6] *See also* **Sohns v. Dahl**, 392 F.Supp. 1208, 1214-1215 (W.D.Va. 1975) (collecting cases demonstrating minimal activities required to establish venue in district where plaintiff was defrauded in violation of the 1934 Act, holding that proper venue over claims extends venue to pendant and other claims arising from same operative facts; and holding that venue over one defendant extends to all defendants who participated in "a common scheme of acts and transactions to violate the securities laws . . . even in the absence of any acts by a particular defendant within that district.").

concerned with development of the Software; all as set forth more fully below.

9    For the same reasons justifying personal jurisdiction in this state, venue is proper in this Court under 28 U.S.C.A §1391(b)(2), as well as under 15 U.S.C.A. §78aa.[6]

### III.  FACTS COMMON TO ALL CAUSES OF ACTION

10.    Plaintiffs formed Bubo Technologies, L.L.C. ("Bubo") to develop software for phones and computers to locate vendors and dispensaries of marijuana, and other functions including tracking product shipments ("Software").  Plaintiffs held 90 percent of Bubo's membership interests, with the remaining 10 percent owned by a third party.  Bubo began offering the Software for download in roughly October 2016 under the trademark BUDBO.

11.    Bubo determined that it needed GPS tracking software to improve the Software's functionality.  Mr. Burnett claimed his company, LaneAxis, Inc. ("LaneAxis"), had the requisite tracking software and that it was functional.  LaneAxis is the sole owner of GPS Cannabis Tracker, Inc., that owned the rights to tracking software.  In order to gain access to the tracking software, Bubo's members entered into a share-exchange agreement with a newly formed company, Budbo, Inc. ("Budbo").  Specifically, the share-exchange agreement obligated LaneAxis to license the tracking software to Budbo.

12.    Budbo has 5,000,000 outstanding shares. The Bubo members received 51 percent of Budbo's outstanding shares in exchange for their membership interests in Bubo.  Plaintiffs in particular received 48.45 percent of Budbo's shares, and continue to own those shares through the date of this complaint.  As a result of the exchange, Bubo became a wholly owned subsidiary of Budbo.  LaneAxis GPSCT, Inc. ("GPSCT") received the remaining 49 percent of the

---

[6] *See also* **Sohns v. Dahl**, 392 F.Supp. 1208, 1214-1215 (W.D.Va. 1975) (collecting cases demonstrating minimal activities required to establish venue in district where plaintiff was defrauded in violation of the 1934 Act, holding that proper venue over claims extends venue to pendant and other claims arising from same operative facts; and holding that venue over one defendant extends to all defendants who participated in "a common scheme of acts and transactions to violate the securities laws . . . even in the absence of any acts by a particular defendant within that district.").

outstanding shares, plus a preferred share.  It is a wholly owned subsidiary of LaneAxis created solely for the share exchange.

13. As a result of the transaction, Mr. Burnett gained effective and actual control of Budbo that he has and continues to exercise to the exclusion of Plaintiffs' participation in the management of Budbo, as well as for his personal gain; all to the detriment of Budbo.  This control is exercised through at least three mechanisms.  **First**, Mr. Burnett is Budbo's CEO as set forth in the share-exchange agreement and Budbo's shareholder agreement.  **Second**, Mr. Burnett controls one of Budbo's two directorships.  Specifically, he was appointed as one of the initial directors and is chairman of the board.  Moreover, he controls his successor through his control of LaneAxis.  In particular, the shareholder agreement gives LaneAxis the right to appoint Mr. Burnett's successor.  As CEO and majority shareholder of LaneAxis, Mr. Burnett can continue to control that directorship.  T**hird**, Mr. Burnett is CEO of GPSCT that has voting control over Budbo.  Specifically, GPSCT owns 49 percent of Budbo's 5,000,000 outstanding voting shares, as well as Budbo's one preferred share.  The preferred share purportedly gives GPSCT the right "to cast up to 15,000,001 votes" in addition to the 5,000,000 voting shares.  So, GPSCT has voting control of Budbo, that Mr. Burnett can direct as he pleases as GPSCT's CEO.

*i.  Mr. Burnett Siphons Funds from Budbo.*

14. Mr. Burnett has used his control of Budbo to abscond with assets, commit *ultra vires* acts, and commit other violations, all to the detriment of Budbo.  Specifically, through a subsidiary, Budbo raised roughly $4.75 million through a utility token sale.  A utility token sale is essentially a fundraising tool in which investors buy digital "tokens."  Instead of obtaining a share of the company as in an initial public offering, the investors can use the tokens to purchase an eventual product or service – here, Budbo's services associated with the Software.

15. Of the amount raised, Mr. Burnett transferred roughly $1.76 million to third

parties for non-Budbo related expenses, as well as to himself. These are detailed in the demand letter at Exhibit B. As examples, $500,000.00 was given to a third party named ICOBox for work it performed for an initial coin offering by LaneAxis. To be clear, this was unrelated to Budbo's utility token sale. Another $100,000.00 was spent to send LaneAxis personnel to a conference in London. Still more funds were paid to LaneAxis' law firm for legal work unrelated to Budbo's business.

16. Mr. Burnett has charged non-Budbo related expenses to company credit cards. This included roughly $70,000.00 for Mr. Burnett and his son's travel expenses to market LaneAxis' initial coin offering described above.

17. And, Mr. Burnett has on multiple occasions transferred money directly to himself and his son, including, but not limited to, $32,000.00 in cash left in a bank account when it was closed.

18. This is not an exhaustive list of Mr. Burnett's financial abuses. Moreover, Mr. Burnett has tried to hide those abuses by cutting off Plaintiffs' access to bank accounts holding Budbo's funds. Specifically, Mr. Burnett originally gave Luke and Jacob Patterson access to the LaneAxis' accounts into which he had transferred proceeds of the utility token sale. However, when they began to question how the funds were being expended, he cut off access.

19. In addition to misuse of company assets, Mr. Burnett has engaged in self-dealing with his company, LaneAxis. Specifically, he hired a software developer to perform work for Budbo without disclosing that one of the developer's owners is also a shareholder of LaneAxis. He similarly hired a law firm without disclosing that two of its partners are LaneAxis shareholders.

20. Mr. Burnett has also misused Budbo's intellectual property. Specifically, he has used Budbo's confidential customer lists to market the services of LaneAxis. And, he has used

Budbo's company events and connections to further the business of LaneAxis to the detriment of Budbo.

### ii.  Failure of Consideration for Share-Exchange Agreement.

21. Again, Plaintiffs exchanged their membership interests in Bubo for shares of Budbo primarily for access to and license of LaneAxis' tracking software, all as set forth in the share-exchange agreement and a License and Services Agreement.  However, following the exchange, Plaintiffs discovered LaneAxis had failed to pay its software developers and the software was inoperable, and would require significant funds and work to complete.  Indeed, Jacob Patterson tried to complete the software himself but was unsuccessful, and it has never become operational.

### iii.  Wrongful Terminations of Director and Officers

22. Plaintiff, Luke Patterson, was appointed by Budbo's shareholder agreement as the second, initial director with Mr. Burnett.  He was also appointed as Budbo's president.  Plaintiff, Jacob Patterson, was appointed by Budbo's chief technical officer.

23. In July 2018, Plaintiffs initiated various written demands to Mr. Burnett to cease misappropriation of company assets and opportunities, and restore the assets.  One of those demands is attached as Exhibit B.  Following that, Mr. Burnett purported to terminate the Pattersons from their various positions in Budbo, all in violation of the shareholder agreement as described more fully below.

## IV.  CAUSE OF ACTION

### A)  CONDITIONS PRECEDENT TO DERIVATIVE ACTION SATISFIED.

24. Plaintiffs bring various causes of action below derivatively, on behalf of Budbo, including breach of fiduciary duty and conversion against LaneAxis and Mr. Burnett.  This Court has diversity jurisdiction, and therefore " 'the law of the incorporating state governs [the]

corporation's internal affairs.' "[7]  Budbo is incorporated under laws of Delaware, and therefore Delaware law governs the derivative causes of action and as well as the procedural mechanism for bringing the derivative suit.[8]

25. Delaware Chancery Rule 23.1 and Federal Rule of Civil Procedure 23.1 have comparable requirements for initiating derivative suits.[9]  First, both requires that derivative claimants first make demand on the corporation for action on the derivative claims, or establish that making such demand is futile.  Here, Plaintiffs' prior counsel sent the letter at Exhibit B to Mr. Burnett, director and Chairman of Budbo, complaining with particularity about his misapplication of roughly $1.76 million of Budbo funds and assets, among other things.  This misapplication included direction of those funds to LaneAxis of which he is the majority owner and CEO, as well as to himself, personally.  These allegations form the basis of the derivative claims and are set forth with particularity in the demand, as well as below.  Mr. Burnett on behalf of himself and Budbo rebuffed the demands and wholly refused to institute any action to pursue the claim and rectify the situation.

26. Second, both Rules require that Plaintiffs be shareholders at the time of the transaction complained of.  Plaintiffs were shareholders at all times relevant to this litigation, including at the time of the wrongful transactions described below, and continue to be.

27. Third, Plaintiffs have not brought this action collusively in order to confer jurisdiction that the court would otherwise lack.

---

[7] *Pilepro, L.L.C. v. Chang*, 152 F.Supp.3d 659, 674-675 (W.D.Tex. 2016) (quoting *Sommers Drug Stores Co. Emp. Profit Sharing Trust v. Corrigan*, 883 F.2d 345, 354 (5th Cir.1989)).
[8] *Id.* (finding derivative actions for officer and director's breach of fiduciary governed by law of incorporation); *also see Garber v. Lego*, 11 F.3d 1197, 1201 (3rd Cir. 1993) (finding procedural requirements of diversity action, including presuit demand, governed by the state of incorporation).
[9] *See Blasband v. Rales*, 971 F.2d 1034, 1052 (3rd Cir. 1992) (finding Chancery and Federal Rule of Procedure to be "comparable.").

28.     These allegations are supported by the verification at Exhibit A as required by Federal Rule of Civil Procedure 23.1.

### B)  BREACHES OF FIDUCIARY DUTY & CONVERSION.

29.     The directors of a corporation manage its business affairs, and are charged with a fiduciary duty to the corporation and its stockholders.[10]  This includes the duties of care and loyalty,[11] the latter of which " 'mandates that the best interest of the corporation and its shareholders takes precedence over any interest possessed by a directory, officer or controlling shareholder and not shared by the stockholders generally.'"[12]

30.     Mr. Burnett, as a director and chairman of the board of Budbo, and as its CEO, owed these fiduciary duties to Budbo.  These included (a) the duty not to convert funds for use by him personally or his company, LaneAxis;[13] and (b) the duty not to disclose Budbo's confidential trade secrets, including customer information, to LaneAxis.[14]  Mr. Burnett breached these duties by appropriating Budbo's funds and intellectual property for himself and others, as well as his company, LaneAxis.

31.     In addition, Mr. Burnett used Budbo's funds to develop various opportunities for his company, LaneAxis, as described above.  Regardless of whether these were in Budbo's line of business, they became Budbo's opportunities because they were funded with Budbo's

---

[10] *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985).
[11] *Id.* at 872-873.
[12] *In re Walt Disney Co. Derivative Litig.*, 907 A.2d 693 (Del. Ch. 2005) (quoting *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (De. 1993)).
[13] *See In re Trim-Lean Meat Products, Inc.*, 4 B.R. 243, 247 (D.Del. 1980) (describing fiduciary duties of officer and director as including "proscription against appropriation of corporate property for private gain.").
[14] *See Breard Research, Inc. v. Kates*, 8 A.3d 573, 603-604 (Del. 2010) (finding officer breached fiduciary duty by disclosing confidential information to third party); *see also* FOLK ON THE DELAWARE GENERAL CORPORATION LAW, §§141.02[A][5] (citing *Shocking Technologies, Inc. v. Michael* finding that director breached his fiduciary duty of loyalty by sharing confidential company information with a potential investor.).

money.[15]  Therefore, Mr. Burnett has usurped Budbo's corporate opportunity in breach of his fiduciary duties.  Budbo has suffered damage as measured by the value of the opportunity, whether based on LaneAxis' profits, intellectual property developed with the funds, or otherwise.

32. These same acts support a separate action for conversion.[16]

33. LaneAxis and GPSCT are liable for Mr. Burnett's acts both (a) jointly and severally as aider and abettors,[17] and (b) vicariously as Mr. Burnett's employers.[18]

### C)  COMMON LAW AND SECURITIES FRAUD IN VIOLATION OF RULE 10b-5.

34. Mr. Burnett fraudulently induced Plaintiffs to enter into the stock-exchange agreement by which they exchanged their membership interests in Bubo for shares of Budbo.  Specifically, Mr. Burnett misrepresented the efficacy of the tracking software which was the primary consideration for entering into the exchange agreement.  Mr. Burnett either knew the software did not function as represented, or misrepresented it was functional with reckless indifference to the truth of the matter.  The misrepresentation was material, and Plaintiffs reasonably relied on it to enter into the share exchange, for which they have suffered damages measured at least by the loss of control of Bubo's intellectual property in the Software and the tradename, BUDBO.  Stated similarly, they surrendered half of the value of Bubo's intellectual

---

[15] See **In re Trim-Lean Meat Products, Inc.**, 4 B.R. 243, 247 (D.Del. 1980) (citing **Guth v. Loft**, 5 A.2d 503, 510-511 (1939) for proposition that "a business opportunity falling outside a corporation's line of business and which would not otherwise be considered a corporate opportunity, nevertheless, will be deemed a corporate opportunity if developed or financed with corporate funds.").

[16] See **Drug, Inc. v. Hunt**, 168 A. 87, 93 (Del. 1933) (stating conversion is "any distinct act of dominion wrongfully exerted over the property of another, in denial of [the plaintiff's] right, or inconsistent with it.").

[17] **Breard Research, Inc. v. Kates**, 8 A.3d 573, 603-604 (Del. 2010) (holding "[a] third party may be liable for aiding and abetting a breach of fiduciary duty if the third party 'knowingly participates' in the breach."); *also see* FOLK ON THE DELAWARE CORPORATION LAW, §141.02[A][13] (citing **Malpiede v. Townson**, 780 A.2d 1075, 1096 (Del. 2001) (holding same)).

[18] See **Estate of Southerland v. Oakwood Mobil Homes, Inc.**, 1997 WL 1737118, 6-7 (Del.Ct.Com.Pl, 1997) (finding employer vicariously liable for employee's fraud by virtue of principal-agent relationship).

property to GPSCT in return for nothing.  In this regard, Mr. Burnett committed common law fraud.[19]

35. These acts similarly violate 15 U.S.C.A §78j and 17 C.F.R. §240.10b-5. Specifically, Mr. Burnett used instruments of interstate commerce to make untrue statements of material fact, and omitted material facts required to render statements not misleading, in connection with the purchase and sale of securities.[20]  Specifically, he stated by telephone and email that the tracking software was functional for the purpose of improving the functionality of the Software when it was not, and he failed to disclose that LaneAxis' prior attempts to render it functional had failed.

36. LaneAxis and GPSCT are jointly and severally liable for the fraud as aiders and abettors,[21] as well as vicariously as Mr. Burnett's employers.[22]

*i.  Request for Rescission of Share-Exchange Agreement.*

37. Rescission is an appropriate remedy for common law fraud in a stock transaction, to the extent it can restore the *status quo ante*.[23]  It is also a remedy for securities fraud in violation of 15 U.S.C.A §78j and 17 C.F.R. §240.10b-5.[24]  Here, Plaintiffs seek a rescission of the share-exchange agreement, by which their membership interests in Bubo – currently owned by Budbo – are restored to them.  Also, that all of Bubo's assets that may have been transferred

---

[19] *See **In re Wayport, Inc. Litigation***, De. Chan. 76 A.3d 296, 323 (2013) (listing elements of fraud).
[20] *See **Dura Pharmaceuticals, Inc. v. Broudo***, 125 S.Ct. 1627, 1630-1631 (2005) (stating private right of action exists under §15 U.S.C.A. §78j(b) and Rule 10b-5, and listing elements of action, and stating it "resembles, but is not identical to, common-law tort actions for deceit and misrepresentation.").
[21] **Breard Research, Inc. v. Kates**, 8 A.3d 573, 603-604 (Del. 2010) (holding "[a] third party may be liable for aiding and abetting a breach of fiduciary duty if the third party 'knowingly participates' in the breach.").
[22] *See **Estate of Southerland v. Oakwood Mobil Homes, Inc**.*, 1997 WL 1737118, 6-7 (Del.Ct.Com.Pl, 1997) (finding employer vicariously liable for employee's fraud by virtue of principal-agent relationship).
[23] *E.g. **Strassbuerger v. Earley***, Del. Ch., 752 A.2d 557, 576-578 (2000)
[24] *See* 15 U.S.C.A §78cc(b); *also see **Randall v. Loftsgaarden***, 106 S.Ct. 3143, 3151-3153 (1986) (noting case law holding rescission is appropriate in some instances).

to Budbo, including but not limited to all intellectual property in the Software and the trademark BUDBO, are restored to Bubo.

38. To the extent GPSCT is required for rescission, it is included as a party, and is culpable for the conduct justifying rescission.[25] Specifically, it is wholly owned by LaneAxis, and thereby controlled by Mr. Burnett in his capacity as LaneAxis' CEO and majority shareholder. Moreover, GPSCT was created by Mr. Burnett solely for the purpose of holding shares in Budbo as part of the share-exchange transaction, and he is its CEO. And, it is a signatory to the share exchange agreement. It is, therefore, a direct participant of the fraud, created solely to facilitate that fraud. Moreover, Mr. Burnett is an employee, and therefore GPSCT is vicariously liable for his fraud.[26]

### D) *ULTRA VIRES* ACTS.

39. Several of Mr. Burnett's actions on behalf of Budbo are *ultra vires – i.e.* contrary to the shareholder agreement. Plaintiffs seek a declaration under 28 U.S.C.A §2201 that they are *void ab initio*,[27] and that certain acts be rescinded under §124(1) of the Delaware Corporation Law.

40. These acts include the following: **First**, termination of Luke Patterson as a director was contrary to one or both of the following provisions of the shareholder agreement: (a) Art. V.C.(ix) requiring unanimous shareholder consent for any change in "the size or composition of the Corporation's Board of Directors or replace[ment] of any of the Directors," or (b) Art. V.A.2. requiring consent of 66 percent of the outstanding shares for "[t]he

---

[25] *See* **Strassbuerger v. Earley**, Del. Ch., 752 A.2d 557, 578 (2000) (citing need for inclusion of share owner and its culpability to order rescission).

[26] *See* **Estate of Southerland v. Oakwood Mobil Homes, Inc**., 1997 WL 1737118, 6-7 (Del.Ct.Com.Pl, 1997) (finding employer vicariously liable for employee's fraud by virtue of principal-agent relationship).

[27] *See* **Lynch v. Coinmaster USA, Inc.**, 614 F.Supp.2d 494, 501 (D.Del. 2009) (holding that "*ultra vires* acts are void *ab initio*."); *see also* **Solomon v. Armstrong**, 747 A.2d 1098, 1113-1114 (Del. Ch. 1999) (listing acts that are voidable including fraud, waste, or *ultra vires* acts).

appointment, removal, or replacement of any members of the Board of Directors of the Corporation."

41. **Second**, Mr. Burnett contends the hundreds of thousands of dollars in payments to third parties for LaneAxis' expenses were loans. If so, they were contrary to one or more of the following provisions of the shareholder agreement: (a) Art. V.A.4. requiring consent of 66 percent of Budbo's outstanding common shares for "[t]he lending of money;" (b) Art. V.C.(x) requiring unanimous consent for any "convey[ance] or dispos[ition] of all or substantially of [Budbo's] property . . ;" (c) Art. V.C.(i) barring "any transaction between [Budbo] and any party related to or affiliated with [Budbo] or its shareholders;" and (d) Art. VII requiring unanimous approval of the Board of Directors for any "transaction between the Corporation and any Shareholder or any Affiliate."

42. Section 124 of the Delaware Corporation Law allows stockholders to seek rescission of any *ultra vires* act, damages, or both.[28] Rescission is available for *ultra vires* contracts if all parties to it are parties to the litigation.[29] Here, Plaintiffs seek rescission of the hundreds of thousands of dollars in what Mr. Burnett contends were loans to LaneAxis, including reimbursement of the amounts loaned.

### E) ATTORNEYS' FEES.

43. Plaintiffs seek an award of reasonable fees for recovery of misapplied funds under their derivative claims as allowed under the common fund doctrine.[30]

44. Plaintiffs further seek an award of fees and costs for the breaches of fiduciary duty by Mr. Burnett.[31]

---

[28] 8 Del. C. §124(1).
[29] Id.
[30] *See* FOLK ON THE DELAWARE GENERAL CORPORATION LAW, §327.10[A]-[B] (citing ***Dover Historical Soc'y, Inc. v. City of Dover Planning Comm'n***, 902 A.2d 1084, 1090 (Del. 2006) (discussing recovery of fees under the common fund doctrine).

45. Plaintiffs further seek fees and costs as allowed by the prevailing party clause of Budbo's shareholder agreement.

### F) RELIEF REQUESTED.

46. Plaintiffs seek rescission of the share-exchange agreement, by which their membership interests in Bubo – currently owned by Budbo – are restored to them. Also, that all of Bubo's assets that may have been transferred to Budbo, including but not limited to all intellectual property in the Software and the trademark BUDBO, are restored to Bubo.

47. Plaintiffs seek damages measured by funds transferred by Mr. Burnett from Budbo to third parties, including LaneAxis. Plaintiffs further seek judgment that any monetary recovery under their derivative actions be awarded directly to them since any award to Budbo would serve no purpose but to reward Mr. Burnett who controls Budbo as described above.[32] Alternatively, to the extent the share-exchange agreement is rescinded and their membership interests in Bubo are restored, Plaintiffs seek award of damages to Bubo.

48. Plaintiffs seek a declaration under 28 U.S.C.A §2201 that Mr. Burnett's *ultra vires* actions are *void ab initio*,[33] and that they be rescinded under §124(1) of the Delaware Corporation Law.

### V.  PRE- AND POSTJUDGMENT INTEREST & COSTS.

49. Plaintiffs seek pre- and postjudgment interest at the rates set forth by law, as well as all recoverable costs

---

[31] ***William Penn Partnership v. Saliba***, 13 A.3d 749, 758-759 (Del. Supr. 2011) (allowing recovery of attorneys' fees for breach of officer and director's breach of fiduciary duty).
[32] ***In re El Paso Pipeline Partners, L.P., Derivative Litigation***, 132 A.3d 67, 54-56 (Del. Ch. 2015, *rev'd other grounds* 152 A.3d 1248 (Del. Supr. 2016)) (collecting cases and authority that recovery can, on occasion, be directed to shareholders).
[33] See ***Lynch v. Coinmaster USA, Inc.***, 614 F.Supp.2d 494, 501 (D.Del. 2009) (holding that "*ultra vires* acts are void *ab initio*."); *see also* ***Solomon v. Armstrong***, 747 A.2d 1098, 1113-1114 (Del. Ch. 1999) (listing acts that are voidable including fraud, waste, or *ultra vires* acts).

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Defendants be cited to appear and answer, and that they have judgment for the relief set forth above.

    Respectfully submitted,

    _____
    JUSTIN M. WELCH
    Texas State Bar No.:  24003876
    **ATTORNEY FOR PLAINTIFF**

    **A member of the Firm of:**

    **BLAZIER, CHRISTENSEN, BROWDER**
      **& VIRR, P.C.**
    Attorneys and Counselors at Law
    901 S. Mopac Expy., Bldg. 5, Ste. 200
    Austin, Texas 78746
    512 476 2622
    (Fax) 512 476 8685
    email:  jwelch@blazierlaw.com